**FILED**
**Feb 08, 2021**
**07:15 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT NASHVILLE

| | | |
|---|---|---|
| **Barbara Wolfe,** | ) | **Docket No. 2020-06-0978** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Chick-Fil-A,** | ) | **State File No. 11533-2020** |
| **Employer,** | ) | |
| **And** | ) | |
| **Arch Insurance Company,** | ) | **Judge Kenneth M. Switzer** |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER DENYING REQUESTED RELIEF

---

Barbara Wolfe slipped on cardboard boxes and fell while working at Chick-Fil-A on February 14, 2020. Chick-Fil-A authorized treatment with Dr. Charles Kaelin, who ultimately concluded that her current symptoms were not related to the fall but rather preexisting conditions.

At a February 2, 2021 expedited hearing, Ms. Wolfe testified that she never experienced the pain she presently feels, and she could fully perform her job duties before the fall. However, this correlation in time, by itself, does not necessarily mean that the fall caused her pain. Rather, the law requires that Ms. Wolfe prove the causal relationship between her fall and her current pain with medical evidence. Because she has not done so at this time, the Court must deny her relief.

### History of Claim

Ms. Wolfe testified that she injured several body parts from the fall, including her head. Chick-Fil-A offered a panel, and she chose Dr. Kaelin, an orthopedic surgeon. Ms. Wolfe immediately lost confidence in him but saw Dr. Kaelin approximately seven times over the coming months. The two offer different versions of his treatment.

Ms. Wolfe testified, over Chick-Fil-A's objection, that at the very first visit, Dr. Kaelin told her, "You did not get injured at work." However, notes from the visit read,

"[Y]esterday she was at work when she slipped on cardboard boxes[.]" She also said Dr. Kaelin said that he and the owner of the Chick-Fil-A where she worked were friends. According to Ms. Wolfe, Dr. Kaelin did not treat her but just ordered MRIs.

Ms. Wolfe disagreed with several of his conclusions, most notably that her present condition is not work-related. She stated that he recommended a second opinion, and she received a panel, but she did not see another physician.[1] Ms. Wolfe, who represents herself, did not attend Dr. Kaelin's deposition and did not request permission to appear by phone.

As for Dr. Kaelin's version of his treatment, he detailed the events of almost every visit at his deposition.

At the first visit, Ms. Wolfe complained of pain in her right hip and shoulder, and her cervical, lumbar, and thoracic spine. X-rays of the hip, pelvis and shoulder were normal. Dr. Kaelin ordered MRIs of her hip, shoulder, and spine, which did not show acute injuries but degenerative conditions predating the injury date. He testified that MRIs are reliable for detecting degenerative and post-surgical changes.

The April visit was a turning point. Dr. Kaelin noted that Ms. Wolfe underwent shoulder surgery before the fall at work. He wrote, "[S]he suffered contusions on her fall but the findings on the MRI are not surgical and predate her injury of February 14, 2020." Dr. Kaelin testified that he explained his findings to Ms. Wolfe, specifically that they were all "longstanding changes," and Ms. Wolfe responded that she was "perfectly normal" before the fall at work. He recommended a second opinion but not surgery.

About the last visit on July 14, Dr. Kaelin testified that:

I told her we had been through two significant workups including MRIs of the cervical and lumbar and also the shoulder and hip. And I reminded her there were no acute findings noted on any of these tests. . . . I just said, none of the subjective complaints match any of the objective findings and we're waiting on a second opinion. . . . I was pretty candid. . . . [T]he law now says it has to be 51%.[2]

Ms. Wolfe argued that she remains in constant, daily pain from the injury, which she did not have before the fall at work. She offered the affidavits of coworkers Josiah

---

[1] The Court cannot tell whether a second opinion was offered. Chick-Fil-A wrote in its brief that it did not offer a second opinion because surgery was not recommended. However, Ms. Wolfe testified that she received a panel with two doctors, but she never attended an appointment because the case manager would not approve it.

[2] As explained in the Findings of Fact and Conclusions of Law, Dr. Kaelin's understanding of the law is incorrect.

Youngers, Ezra Medcalf, and Nathaniel Adams, who corroborated her testimony that she performed her job duties without any problem before the fall at work.

She also introduced records from three visits in February to a chiropractor, who documented the same complaints and provided some relief. Ms. Wolfe conveyed the same mechanism of injury; in the "accident details" portion, the notes state "work-related." However, in his diagnoses and assessments, the chiropractor did not say whether her condition was work-related.

Ms. Wolfe seeks an order that Chick-Fil-A provide an independent physician for her treatment. Chick-Fil-A argued it is not required to do so, but Ms. Wolfe may return to Dr. Kaelin if she wishes.

## Findings of Fact and Conclusions of Law

To obtain the requested relief, Ms. Wolfe must show that she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2020); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Ms. Wolfe must prove that her injury arose primarily from work. Specifically, this means she must show "to a reasonable degree of medical certainty that [the incident] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C). Except in the most obvious, simple and routine cases, the employee must establish *by expert medical evidence* the causal relationship between the claimed injury (and disability) and the employment activity. *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991) (emphasis added).

Applying those standards, the Court finds that, based on her testimony and the medical records, Ms. Wolfe injured her right hip and shoulder, back and *head.* Chick-Fil-A questioned her truthfulness regarding which body parts she injured, both in cross-examination and at a previous deposition that lasted approximately five hours. Ms. Wolfe's explanation that she might not have mentioned her headaches at the deposition is reasonable.[3] This line of questioning did not help to resolve the central issue in this case, which is medical causation.

On that issue, Dr. Kaelin testified that the MRIs of Ms. Wolfe's hip, shoulder, and spine revealed longstanding changes that were not caused by the February 14, 2020 fall. Stated another way, the objective diagnostic testing showed no acute injuries but rather

---

[3] Chick-Fil-A also cross-examined her at length about past workers' compensation claims and surgeries, an auto accident, her rheumatoid arthritis, and other matters of little to no relevance.

injuries that preexisted the work incident. Dr. Kaelin testified that an MRI is reliable. He acknowledged that he seemed unable to alleviate Ms. Wolfe's pain, but after the April visit, he never altered his opinion that her current pain is not work-related.

Importantly, Dr. Kaelin's opinion is presumed correct because Ms. Wolfe chose him from a panel. His opinion may be overcome by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(E). Ms. Wolfe offered her chiropractor's records, which confirm that she reported falling on boxes at work, but they did not contain a doctor's assessment of the work-relatedness of her condition. Therefore, she did not rebut the presumption of correctness given to Dr. Kaelin's opinion at this time.

Ms. Wolfe testified that she could perform all her job duties, in a physically demanding position, before the fall at work. Her coworkers bolstered this assertion. The Supreme Court has consistently held that an employee's assessment as to his or her own physical condition is competent testimony that is not to be disregarded. *Limberakis v. Pro-Tech Security, Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *5-6 (Sept. 12, 2017). The Court considered this testimony and believes her on this point. She said she has daily pain. The Court believes this, too. Regardless, Dr. Kaelin ruled out the fall at work as the cause of her pain based on reliable and objective testing. While Ms. Wolfe's fall and the onset of her pain happened close in time, the timing does not mean the two are causally related.

Finally, Ms. Wolfe insisted that Dr. Kaelin's judgment was clouded by his friendship with the owner of the Chick-Fil-A where she worked. Her allegations are serious. So far, she has offered no proof of this relationship or any bias on Dr. Kaelin's part other than her testimony. Ms. Wolfe could have cross-examined Dr. Kaelin at the deposition, but she chose not to attend. The Court cannot find the existence of any bias based on Ms. Wolfe's word alone.

The Court sympathizes with Ms. Wolfe's pain and financial struggles. However, it must apply the law. Ms. Wolfe has not presented sufficient evidence from which this Court can conclude that she is likely to prevail at a hearing on the merits regarding her request for a new physician. However, she may return to Dr. Kaelin for further treatment.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Wolfe's requested relief is denied at this time.

2. This case is set for a scheduling hearing on **March 22, 2021, at 9:15 a.m. Central Time.** You must call 615-532-9552 or toll-free at 866-943-0025 to participate. Failure to call might result in a determination of the issues without your participation.

**ENTERED February 8, 2021.**


_____

_Kenneth M. Switzer_

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1. Affidavit of Barbara Wolfe
2. Form C-42, Choice of Physician
3. Wage statement
4. Dr. Kaelin's deposition transcript
5. Dr. Smith's medical records
6. Affidavit of Josiah Youngers
7. Affidavit of Ezra Medcalf
8. Affidavit of Nathaniel Adams
9. Pp. 109-111, Ms. Wolfe's deposition
10. First Report of Injury (identification only)
11. P. 37, Ms. Wolfe's deposition
12. P. 40, Ms. Wolfe's deposition
13. P. 106, Ms. Wolfe's deposition
14. P. 107, Ms. Wolfe's deposition
15. P. 168, Ms. Wolfe's deposition

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Pretrial Order
5. Order on Status Hearing
6. Employer's Witness and Exhibit List
7. Employer's Pre-Expedited Hearing Statement
8. Employer's Brief (without attachments)

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on February 8, 2021.

| Name | Certified Mail | Regular mail | Email | Sent to |
|---|---|---|---|---|
| Barbara Wolfe, Self-represented employee | X | | X | Wolfie77x7@gmail.com 2977 Melvin Rd. Hermitage, TN 37076 |
| Greg Fuller, Ashley McGee, Employer's attorneys | | | X | ghfuller@mijs.com abmcgee@mijs.com mnbaker@mijs.com |

_____

**PENNY SHRUM, COURT CLERK**
**WC.CourtClerk@tn.gov**



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s) (Requesting Party):** _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*